# UNITED STATES DISTRICT COURT

United States Courts
Southern District of Texas
FILED

DEC. 0 8 2025

Nathan Ochsner, Clerk of Court

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

LATASHA ALLENETTE WHITING,

Plaintiff,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT,

Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

# PLAINTIFF'S ORIGINAL COMPLAINT

---

## I. INTRODUCTION

1. Plaintiff Latasha Allenette Whiting ("Plaintiff") brings this civil rights, disability discrimination, retaliation, and employment action against Houston Independent School District ("HISD"), arising from a long-standing, continuous pattern of retaliation, discrimination, record manipulation, and constitutional violations spanning from 2011 through 2025.

2. This history includes:

- retaliation after Plaintiff refused to participate in misconduct involving a medically fragile student (2011–2012);

- subsequent litigation against HISD (2013–2016);

- two bankruptcies during HISD-related employment retaliation;

- renewed discrimination after Plaintiff's rehire in 2021;

- a severe workplace injury on December 1, 2023;

- ADA and FMLA violations;

- workers' compensation retaliation;

- constitutional violations under 42 U.S.C. §1983;

- wrongful termination during active medical treatment;

- financial devastation including foreclosure.

3. This Complaint presents a comprehensive, interconnected factual pattern demonstrating that HISD's retaliation is systemic, long-term, and violates multiple federal and state laws.

---

## II. PARTIES

4. Plaintiff Latasha Allenette Whiting is an individual residing in Harris County, Texas.

5. Defendant Houston Independent School District is a Texas governmental entity headquartered at 4400 West 18th Street, Houston, Texas 77092, and may be served through its Superintendent, Mike Miles.

---

## III. JURISDICTION

6. This Court has federal question jurisdiction under 28 U.S.C. §1331 because Plaintiff brings claims under:

- Title VII of the Civil Rights Act of 1964

- Americans with Disabilities Act (ADA)

- Rehabilitation Act §504

- Family and Medical Leave Act (FMLA)

- 42 U.S.C. §1983

- U.S. Constitution (Fourteenth Amendment)

- Texas Labor Code §451

7. Supplemental jurisdiction exists over Plaintiff's state-law claims under 28 U.S.C. §1367.

## IV. VENUE

8. Venue is proper under 28 U.S.C. §1391 because:

- the events giving rise to the claims occurred in Harris County, Texas; and

- HISD is headquartered within this District.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the EEOC.

10. The EEOC issued a Right-to-Sue Notice on April 24, 2025.

11. Plaintiff files this action within the statutory time period.

## VI. RELATED CASES

12. Plaintiff's claims arise from a long pattern of retaliatory conduct by HISD, documented in earlier litigation:

a. Rose v. Houston Independent School District, Case No. 2014-27763 (127th District Court).

b. Rose v. Houston Independent School District, Case No. 14-16-00687-CV (Fourteenth Court of Appeals).

c. In re Latasha Allenette Rose, Case No. 13-31839 (Bankr. S.D. Tex., Chapter 13).

d. In re Latasha Allenette Rose, Case No. 13-37480 (Bankr. S.D. Tex., Chapter 7).

e. Texas Department of Insurance – Workers' Compensation Division File No. 24158501-01.

---

# VII. EQUITABLE TOLLING

13. Equitable tolling applies because Plaintiff faced:

- medical incapacity following workplace injury;

- cognitive impairment confirmed by neuropsychological testing;

- financial crises including bankruptcies and foreclosure;

- destruction and withholding of personnel records;

- denial of access to ADA, FMLA, and HR documents;

- misleading employment notices;

- escalation of symptoms requiring ongoing treatment.

14. HISD's actions and omissions created substantial barriers preventing earlier filing.

15. Plaintiff acted diligently upon regaining access to records and medical clarity necessary to file this suit.

---

# VIII. SUMMARY OF CLAIMS

16. Plaintiff asserts claims for:

- Retaliation (Title VII, ADA, FMLA, Texas Labor Code §451)

- Disability discrimination (ADA, Rehabilitation Act)

- Hostile work environment

- Failure to accommodate

- Interference with protected leave

- Constitutional violations under 42 U.S.C. §1983

- Wrongful termination

- Negligence

- Damages including back pay, front pay, emotional distress, and financial losses resulting from foreclosure and bankruptcy

## A. Origin of Retaliation: The 2011–2012 Abby C. Incident at HSLECJ

17. Plaintiff was employed at the High School for Law Enforcement and Criminal Justice ("HSLECJ") during the 2011–2012 school year.

18. During that year, Principal Carol Mosteit directed Plaintiff to provide misleading or incomplete information to the parent of a medically fragile wheelchair-using student ("Abby C."), in violation of IDEA and Section 504 protections.

19. Plaintiff refused to participate in unlawful conduct and instead provided accurate, truthful information to the parent, advocating for the student's safety and educational rights.

20. Immediately after Plaintiff refused to falsify information, administrators labeled her "noncompliant," "difficult," "not a team player," and "a problem."

21. These labels were placed in Plaintiff's personnel record and followed her for more than a decade, resurfacing whenever Plaintiff enforced policy, advocated for students, or questioned improper administrative conduct.

22. Plaintiff subsequently filed suit against HISD in 2013–2014 under her former legal name, Latasha Rose:

- Rose v. HISD, Case No. 2014-27763 (127th District Court)

- Rose v. HISD, Case No. 14-16-00687-CV (Fourteenth Court of Appeals)

23. Numerous documents from the 2011–2014 period—including evaluations, grievances, and HR communications—are now missing from Plaintiff's personnel file, demonstrating spoliation and attempts to conceal earlier retaliation.

## B. 2013–2014 Retaliation and Financial Collapse Leading to Bankruptcy

24. While Plaintiff pursued her 2013–2014 claims, HISD denied her reemployment, continued using retaliatory labels, and obstructed her ability to secure stable employment.

25. This retaliation directly caused severe financial instability, leading Plaintiff to file:

- In re Rose, Case No. 13-31839 (Chapter 13), filed March 29, 2013

- In re Rose, Case No. 13-37480 (Chapter 7), filed December 2, 2013

26. These bankruptcies occurred during periods of active retaliation, establishing a clear causal link between HISD's actions and Plaintiff's financial collapse.

27. HISD's blacklisting policy, DFF (LOCAL), was used to deny Plaintiff future employment opportunities.

---

## C. Retaliation Continues at Wisdom High School (2021–2022)

28. Plaintiff returned to HISD in 2021 under her current legal name.

29. Staff at Wisdom High School immediately referenced Plaintiff's past, stating: "District people know about your history."

30. Plaintiff made good-faith complaints regarding policy violations and hostile administrative behavior. Most complaints received no response.

31. Plaintiff again experienced isolation, hostile treatment, and removal of responsibilities consistent with the retaliation pattern originating in 2011.

---

## D. Retaliation Escalates at Washington High School (2023–2024)

32. In 2023, Plaintiff applied for employment under the name "Whiting" and was hired immediately—unlike when she applied under her former name "Rose" at Washington in 2018.

33. Plaintiff encountered Dr. Christina Wehde-Roddiger, who was involved in the earlier Abby C. incidents and subsequent litigation.

34. Plaintiff was excluded from communications, removed from key responsibilities, and subjected to increased scrutiny and hostility.

35. Staff openly mocked Plaintiff during a panic attack, creating a discriminatory and hostile work environment.

---

## E. The December 1, 2023 Workplace Injury and HISD's Immediate Mishandling

36. On December 1, 2023, Plaintiff was injured while intervening in a student fight.

37. Plaintiff was shoved backward and struck her head, neck, and upper back against a vending machine.

38. HISD failed to document the incident properly, preserve video, notify Risk Management, or provide appropriate medical assistance.

39. HISD falsely reported to the Texas Department of Insurance–Workers' Compensation Division ("TDI–DWC") that Plaintiff "did not hit the vending machine."

40. This false statement was used to dispute injury causation and limit compensability.

---

## F. December 2023 – March 2024: Worsening Symptoms, ADA Requests, and FMLA Documentation

41. Following the injury, Plaintiff developed chronic cervical pain, neurological deficits, numbness, cognitive impairment, severe anxiety, and PTSD-level symptoms.

42. Plaintiff underwent multiple interventional procedures, which failed due to underlying cervical spinal stenosis diagnosed later.

43. Plaintiff submitted ADA and FMLA documentation with full medical support.

44. HISD ignored, denied, or refused to process Plaintiff's accommodation and leave requests.

---

## F(1). Plaintiff's Administrative Dean Job Description and Essential Duties

(Inserted as you requested)

45. Plaintiff's Administrative Dean role required her to:

- support instructional programs;

- coach and evaluate teachers;

- supervise instruction;

- analyze student data;

- manage campus discipline;

- engage with students and parents;

- participate in leadership and academic planning.

46. These essential duties required daily interaction with staff, students, and campus leadership.

47. Plaintiff performed these duties until HISD abruptly removed her from Washington High School and reassigned her to HELC, where none of these essential functions existed. There were no students or parents ( referred to as "Teacher Jail").

---

## G. March 8, 2024 — Retaliatory Removal and Constructive Isolation

48. On March 8, 2024, Plaintiff was removed from her position without evaluation, conference, investigation, or compliance with HISD policy.

49. Plaintiff was reassigned to Room B101 at HELC, which was unsafe, non-FERPA compliant, and had malfunctioning HVAC.

50. The reassignment was punitive and intended to pressure Plaintiff into resignation or abandonment of her medical claims.

---

## H. Sexual Favoritism and Hostile Conduct by Assistant Principal Branch

51. Assistant Principal Vincent Branch cultivated a hostile environment driven by sexual favoritism and gender bias.

52. Branch told Plaintiff, "As long as you and I are good, you'll be safe here," and stated, "Dr. Phillips is misogynistic."

53. When Plaintiff began dating outside work, Branch's treatment became hostile.

54. Plaintiff's duties were then shifted to male employees favored by Branch and Dr. Phillips.

## I. Record Manipulation, Withholding, and Destruction

55. HISD produced an incomplete personnel file missing numerous critical documents.

56. Missing items included evaluations, ADA forms, FMLA communications, workers' compensation logs, internal HR notes, grievances, and documents from earlier litigation.

57. HISD retained outdated "Rose" documents while withholding or deleting newer "Whiting" records.

## J. Wrongful Termination During Active Medical Treatment

58. Plaintiff was terminated on June 6, 2024, during ongoing medical treatment and while her FMLA certification was pending.

59. HISD provided no pre-termination notice, no due process, and no performance documentation.

60. Plaintiff immediately lost her salary, stipends, insurance, and retirement contributions.

## K. August 2024 — HISD Contradicts Its Own Termination Decision

61. On August 17, 2024, HISD emailed Plaintiff stating she was still employed and on FMLA leave through August 31, 2024.

62. This contradicted her June 6 termination and demonstrated administrative misconduct and FMLA interference.

63. Plaintiff responded with updated medical documentation on August 22, 2024; HISD never replied.

---

## Financial Devastation: Foreclosure and Loss of Livelihood

64. HISD's actions directly caused Plaintiff's financial collapse, inability to pay her mortgage, and foreclosure.

Lost salary of $96,213 annually;

Lost stipends of $12,000;

Missed pay raises and step increases;

Lost retirement contributions;

Lost health insurance benefits.

---

## L. Workers' Compensation Retaliation and Medical Harm

65. Plaintiff's workers' compensation file reflects HISD's attempts to minimize, dispute, or misrepresent her injuries.

66. HISD relied on an RME physician whose findings contradicted Plaintiff's treating providers and neuropsychological evaluation.

67. Plaintiff underwent months of injections, ablations, neurological assessments, and pain-management therapy.

68. A specialist diagnosed cervical spinal stenosis consistent with traumatic aggravation.

69. A neuropsychologist documented PTSD-level symptoms, somatic symptom disorder, cognitive inefficiency, and concluded:

"Without this incident, Ms. Whiting would not be experiencing these symptoms."

70. HISD ignored this medical evidence and denied accommodations while Plaintiff was still under active restrictions.

---

## M. Workers' Compensation Injury, Misrepresentations, Retaliation, and Resulting Disability

71. Plaintiff's injury caused significant disability under the ADA and TCHRA.

72. HISD refused accommodations, failed to engage in the interactive process, and treated Plaintiff's medical restrictions as misconduct.

73. HISD retaliated for Plaintiff's workers' compensation participation by isolating her, removing duties, disputing her claims, and terminating her early.

74. Termination during active medical treatment cut off Plaintiff's medical care, income, insurance, and legal protections.

75. Plaintiff suffered medical deterioration, emotional trauma, financial devastation, and long-term disability.

76. HISD's conduct supports Plaintiff's claims under ADA, FMLA, Section 504, TCHRA, Texas Labor Code §451, and 42 U.S.C. §1983.

# COUNT I – TITLE VII RETALIATION

(Clean integrated version.)

1. Plaintiff engaged in protected activity under Title VII when she reported discriminatory treatment, hostile behavior, sexual favoritism, and administrative misconduct by Assistant Principal Vincent Branch and others during the 2023–2024 school year.

2. Plaintiff opposed behaviors that contributed to a discriminatory and sexually charged environment, including Branch's statements implying her job security depended on maintaining a personal relationship with him and his remarks about gender bias among administrators.

3. Plaintiff reported and opposed exclusion, removal of duties, and hostile treatment directed at her after she challenged discriminatory behavior. These objections constitute protected activity under Title VII.

4. After Plaintiff engaged in protected activity, HISD escalated adverse actions by stripping her duties, isolating her, excluding her from key communications, and transferring her to HELC where she had no responsibilities.

5. HISD intensified scrutiny and hostility following Plaintiff's complaints, contributing to a hostile environment and undermining her professional standing.

6. HISD removed Plaintiff from her position on March 8, 2024 without due process and reassigned her to a room with no meaningful duties.

7. On May 24, 2024, HISD issued a termination notice, and on June 6, 2024, terminated Plaintiff's contract early. The close timing establishes retaliation.

8. HISD's actions—including duty removal, isolation, reassignment, and early termination—constitute retaliation under Title VII.

---

# COUNT II – DISABILITY DISCRIMINATION (ADA / Section 504 / TCHRA)

1. Plaintiff is an individual with a disability under the ADA, Section 504, and TCHRA due to cervical and neurological injuries sustained on December 1, 2023.

2. Plaintiff submitted an ADA Accommodation Request on April 18, 2024 explaining her medical limitations and harmful commute.

3. Plaintiff provided full medical contact information for verification; HISD never contacted her physician or initiated the interactive process.

4. Plaintiff's essential duties as Administrative Dean could not be performed at HELC, where she was isolated in a room with no duties.

5. HISD ignored Plaintiff's documented disability and refused to consider reasonable accommodations.

6. HISD's actions constitute disability discrimination under the ADA, Section 504, and TCHRA.

---

# COUNT III – FAILURE TO ACCOMMODATE (ADA / Section 504 / TCHRA)

1. Plaintiff provided HISD with medical documentation confirming her disability and restrictions.

2. Plaintiff requested reasonable accommodations, including remote work or reassignment.

3. HISD never contacted Plaintiff's physician, sought clarification, or initiated the interactive ADA process.

4. HISD denied accommodations without explanation.

5. HISD failed to consider alternatives, including reassignment to a campus where essential duties existed.

6. HISD's refusal to engage in the interactive process or provide reasonable accommodations violates the ADA, Section 504, and TCHRA.

---

# COUNT IV – RETALIATION (ADA / Section 504 / TCHRA)

1. Plaintiff engaged in protected activity by submitting ADA and FMLA documentation.

2. Immediately after her ADA request, HISD stripped her duties and isolated her at HELC.

3. HISD maintained a medically unsafe commute requirement despite her documented restrictions.

4.  One month after her ADA request, HISD issued a termination notice.

5.  HISD's conduct constitutes retaliation under the ADA, Section 504, and TCHRA.

---

# COUNT V – REHABILITATION ACT (SECTION 504)

1.  HISD receives federal financial assistance and is subject to Section 504.

2.  Plaintiff is a qualified individual with a disability.

3.  HISD ignored Plaintiff's ADA request, denied accommodations, and placed her in an environment where she could not perform essential duties.

4.  HISD's actions constitute discrimination and retaliation under Section 504.

---

# COUNT VI – FMLA INTERFERENCE

1.  Plaintiff submitted FMLA certification documenting her medical restrictions.

2.  HISD failed to provide required notices, guidance, or designation of her leave.

3.  HISD continued to require a harmful commute that contradicted her medical restrictions.

4.  HISD's actions interfered with Plaintiff's FMLA rights.

---

# COUNT VII – FMLA RETALIATION

1.  Plaintiff engaged in protected FMLA activity by submitting medical certification.

2. HISD removed duties, isolated her, and failed to support her medical limitations.

3. Less than a month later, HISD issued a termination notice.

4. The timing and circumstances demonstrate retaliation under the FMLA.

---

# COUNT VIII – HOSTILE WORK ENVIRONMENT

1. Plaintiff experienced escalating hostility after her injury, ADA request, and FMLA submission.

2. HISD removed duties, isolated her, and placed her in a room without any responsibilities.

3. HISD forced her to maintain a harmful commute despite her disability.

4. Sexual favoritism and derogatory remarks by Branch contributed to the hostile environment.

5. HISD's conduct created a workplace that was intimidating, degrading, and discriminatory.

---

# COUNT IX – DEPRIVATION OF DUE PROCESS (42 U.S.C. §1983)

1. Plaintiff held a protected property interest in her employment contract.

2. HISD terminated Plaintiff early without notice, investigation, or hearing.

3. HISD acted under color of state law.

4. HISD's actions deprived Plaintiff of due process in violation of the Fourteenth Amendment.

# COUNT X – RETALIATION FOR FILING A WORKERS' COMPENSATION CLAIM

(Texas Labor Code §451.001 — Expanded Full Version)

1. Plaintiff suffered a traumatic workplace injury on December 1, 2023 while attempting to break up a student altercation. Plaintiff was shoved backward and struck her head, neck, and upper back against a vending machine, immediately experiencing pain, neurological symptoms, and functional impairment.

2. Plaintiff promptly reported the injury and sought medical treatment. Plaintiff filed a workers' compensation claim and fully participated in all required evaluations, procedures, and medical appointments.

3. HISD failed to properly document the incident, failed to preserve video evidence of the injury, and submitted a false report to the Texas Department of Insurance–Division of Workers' Compensation ("TDI–DWC") claiming that Plaintiff "did not hit the vending machine," despite Plaintiff's consistent reporting and medical records confirming impact trauma.

4. HISD's false reporting was used to dispute injury causation, restrict compensable conditions, and impede Plaintiff's access to appropriate medical care.

5. Plaintiff underwent extensive treatment under workers' compensation, including spinal injections, nerve ablations, neurological evaluations, and pain-management therapies. These treatments failed to alleviate her symptoms due to underlying cervical spinal stenosis that developed as a traumatic aggravation of her injury.

6. Plaintiff also completed a comprehensive neuropsychological evaluation under the workers' compensation system. The neuropsychologist diagnosed Plaintiff with:

   o PTSD-level symptoms,

   o Somatic Symptom Disorder,

   o Cognitive inefficiency,

   o Processing deficits,

   o Anxiety and depressive symptoms,

    ○  Functional impairment,

    and explicitly concluded: "Without this incident, Ms. Whiting would not be experiencing these symptoms."

7. Despite this objective medical evidence, HISD relied heavily on a Required Medical Examination (RME) physician whose findings contradicted Plaintiff's treating physicians and the neuropsychologist. HISD used the RME report to dispute restrictions, deny disability accommodations, and challenge Plaintiff's impairment rating.

8. After Plaintiff filed and pursued her workers' compensation claim, HISD retaliated by stripping her of her essential job duties, isolating her at HELC in an empty room with no work responsibilities, excluding her from communications, and treating her medically documented limitations as performance issues rather than disability-related needs.

9. HISD further retaliated by requiring Plaintiff to maintain a lengthy and medically unsafe commute despite documentation showing that prolonged sitting and driving exacerbated her condition. HISD instructed Plaintiff to "pull over if needed," showing disregard for her safety and well-being.

10. HISD withheld or failed to provide workers' compensation–related documentation, including internal communications, injury reports, HR records, and documents necessary for Plaintiff to meaningfully participate in the workers' compensation process.

11. When Plaintiff sought clarification regarding her impairment rating and pursued coverage for psychological, cognitive, and neurological injuries, HISD escalated retaliatory behavior.

12. On May 24, 2024—while Plaintiff was undergoing active treatment and while workers' compensation determinations remained pending—HISD issued a termination notice.

13. On June 6, 2024, HISD terminated Plaintiff's contract three months before its expiration, cutting off her access to:

- medical treatment,

- income,

- health insurance,

- FMLA leave,

- and continued workers' compensation protections.

14. The timing of HISD's escalating hostility, removal of duties, isolation, denial of accommodations, and early termination establishes a direct causal connection between Plaintiff's protected workers' compensation activity and the adverse employment actions taken against her.

15. HISD's actions—including job stripping, isolation, denial of medical restrictions, disputing compensability, withholding documents, and terminating Plaintiff during active medical care—constitute retaliation prohibited under Texas Labor Code §451.001.

16. As a result of HISD's retaliation, Plaintiff suffered:

- worsening medical conditions,

- inability to continue treatment,

- emotional distress,

- substantial financial loss,

- loss of employment and benefits,

- foreclosure on her home,

- and long-term disability with reduced earning capacity.

17. HISD's conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's statutory rights under Texas law.

---

# COUNT XI – WRONGFUL TERMINATION / EARLY CONTRACT TERMINATION

1. Plaintiff was terminated three months before her contract expired.

2. HISD gave no notice, no due process, and no legitimate justification.

3. HISD failed to follow its own policies and procedures.

4. Plaintiff experienced severe financial and professional harm as a result.

# COUNT XII – NEGLIGENCE

1. HISD failed to provide a safe workplace and failed to respond properly to Plaintiff's injury.

2. HISD's negligence aggravated Plaintiff's medical condition and delayed recovery.

3. HISD breached its duty of care.

# COUNT XIII – BOARD POLICY VIOLATIONS

1. HISD failed to follow policies on safety, ADA processing, documentation, and termination procedures.

2. HISD's violations caused harm and led to unjustified early termination.

# COUNT XIV – TCHRA DISABILITY DISCRIMINATION AND RETALIATION

1. Plaintiff is disabled under TCHRA.

2. HISD refused accommodations, escalated hostility after protected activity, and terminated her early.

3. HISD's actions constitute disability discrimination and retaliation under Texas law.

# PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Latasha Allenette Whiting respectfully prays that upon trial of this cause, she be granted judgment against Defendant Houston Independent School District and that the Court award her the following relief:

A. Declaratory Relief

    1.  A declaration that Defendant violated Plaintiff's rights under:

          o   Title VII of the Civil Rights Act;

          o   Americans with Disabilities Act (ADA);

          o   Section 504 of the Rehabilitation Act;

          o   Family and Medical Leave Act (FMLA);

          o   Texas Labor Code §451;

          o   Texas Commission on Human Rights Act (TCHRA);

          o   42 U.S.C. §1983;

          o   The Fourteenth Amendment.

    2.  A declaration that Defendant's reasons for termination were pretextual and unlawful.

---

B. Injunctive Relief

3. An order requiring HISD to correct Plaintiff's personnel file to remove retaliatory, false, and misleading information.

4. An order requiring HISD to stop discriminatory and retaliatory practices.

5. An order requiring HISD to preserve all electronic and paper records relevant to Plaintiff's employment.

---

C. Economic Damages

6. Back pay, including lost wages, salary, stipends, and retirement contributions.

7. Front pay or reinstatement (if feasible and desired).

8. Loss of earning capacity.

9. Loss of employment-related benefits including insurance and medical coverage.

---

D. Compensatory Damages

10. Emotional distress, mental anguish, humiliation, damage to professional reputation, trauma-related damages, and physical pain and suffering.

11. Compensation for foreclosure, credit harm, and financial losses directly caused by HISD's unlawful conduct.

---

E. Statutory and Liquidated Damages

12. Statutory damages under Title VII, ADA, Section 504, and TCHRA.

13. Liquidated damages under the FMLA.

14. Civil penalties allowed under Texas Labor Code §451.001.

---

F. Punitive Damages

15. Punitive damages for Defendant's willful, malicious, reckless, and intentional violations of Plaintiff's rights under federal and state law.

---

G. Attorneys' Fees and Costs

16. Reasonable attorneys' fees, expert fees, court costs, and litigation expenses as permitted by law (even if Plaintiff proceeds pro se now, she may recover fees if later represented).

---

H. Prejudgment and Post-Judgment Interest

17. Pre- and post-judgment interest at the maximum rate allowed by law.

---

I. All Other Relief

18. All other relief, at law or equity, to which Plaintiff may be justly entitled.

---

# REBUTTAL TO HISD'S EEOC POSITION STATEMENT

HISD's Position Statement (submitted by attorney Bryce Corsaut) contains omissions,

distortions, and demonstrably false assertions.

1. False Claims of ADA Compliance

HISD falsely asserts it granted Plaintiff's ADA accommodation by relocating her to Room B101.

That room was:

unsafe,

non-private,

non-compliant,

environmentally hazardous.

The reassignment worsened Plaintiff's disability and was used to isolate her.

2. HISD Misrepresents Harassment Timeline

Retaliation escalated immediately after Plaintiff reported harassment and submitted ADA

paperwork.

3. HISD Omits Its 10-Year Pattern of Retaliation

HISD ignores:

Plaintiff's whistleblower activity,

prior litigation,

prior retaliatory conduct,

continuing internal stigma.

4. HISD Claims No Knowledge of Disability

This is false.

Administrators openly mocked Plaintiff's symptoms and discussed her panic attack without authorization.

5. HISD Ignores Sexual Favoritism Allegations

HISD omits all facts involving Branch's inappropriate conduct and subsequent retaliation.

6. HISD Misstates Reason for Removal

No documentation supports Plaintiff's sudden March 8 removal.

7. HISD Claims "No Wrongdoing Found"

HISD's investigations were biased, incomplete, and pretextual.8. HISD Misstates Fifth Circuit Law

Retaliatory removal, medical deterioration, FMLA interference, and termination are not "de minimis.

9. HISD's Narrative Conflicts With Physical and Medical Evidence

Medical records, photos, emails, witness statements, and union communications contradict HISD's statements.

Conclusion of Rebuttal

HISD's Position Statement is incomplete, inaccurate, and evidences pretext.

# JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable under federal and state law.

---

Respectfully submitted,

/s/ Latasha Allenette Whiting

Latasha Allenette Whiting

16506 Bluff Springs Drive

Houston, Texas 77095

Phone: (832) 746-9589

Email: pickrose1973@gmail.com

Plaintiff, Pro Se

# MASTER MOTION PACKET

LATASHA WHITING v. HOUSTON ISD

Consolidated Motions for Relief

---

# INDEX OF MOTIONS

1.  Motion for Leave to Proceed In Forma Pauperis

2.  Motion for Appointment of Counsel

3.  Emergency Motion for Temporary Restraining Order (TRO)

4.  Motion for Preliminary Injunction

5.  Motion for Judicial Notice

6.  Motion to Relate Cases

7.  Motion to Consolidate Related Cases

8.  Motion for Preservation of Evidence

9.  Motion for Service by U.S. Marshals Service

10. Motion for Emergency Hearing

11. Motion for Leave to File Excess Pages

# PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S TIMELINESS DEFENSE

AND MOTION TO DECLARE CLAIMS TIMELY**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

LATASHA ALLENETTE WHITING,

Plaintiff,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT,

Defendant.

Civil Action No. _____

---

# PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S TIMELINESS DEFENSE AND

MOTION TO DECLARE PLAINTIFF'S CLAIMS TIMELY**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff Latasha Allenette Whiting ("Plaintiff"), and files this Motion to Dismiss Defendant's anticipated or asserted timeliness defense and to declare Plaintiff's claims timely under federal and state law. In support, Plaintiff states as follows:

---

# I. INTRODUCTION

Defendant HISD has repeatedly engaged in conduct designed to:

1. delay Plaintiff's access to critical employment and personnel records;

2. conceal adverse actions and retaliation;

3. manipulate or destroy documents necessary for Plaintiff to understand her claims; and

4. mislead Plaintiff regarding her employment status, FMLA designation, medical leave rights, and termination.

Because of HISD's misconduct, Plaintiff invokes:

- Equitable Tolling,

- Continuing Violation Doctrine,

- Discovery Rule, and

- Fraudulent Concealment

to bar HISD from asserting any untimeliness defense.

---

# II. LEGAL STANDARD

A timeliness defense may be dismissed where:

1. Defendant's conduct prevented timely filing

    (See Holland v. Florida, 560 U.S. 631 (2010); Irwin v. Dept. of Veterans Affairs, 498 U.S. 89 (1990)).

2. The plaintiff exercised diligence but was hindered by misleading, incomplete, or concealed information

    (See Clark v. Resistoflex Co., 854 F.2d 762, 765 (5th Cir. 1988)).

3. There is a continuing course of retaliation or discrimination

(See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

4. The employer destroyed, withheld, or manipulated evidence

(See Rhodes v. Guiberson Oil Tools, 927 F.2d 876 (5th Cir. 1991)).

HISD's conduct meets every category.

---

# III. ARGUMENTS

---

## A. Equitable Tolling Applies Due to Plaintiff's Medical Incapacity

Following her December 1, 2023 workplace injury, Plaintiff suffered:

- cervical radiculopathy,

- spinal stenosis,

- neurological impairment,

- PTSD-level symptoms,

- cognitive processing deficits,

- depression and anxiety,

- somatic symptom disorder confirmed by neuropsychological testing.

These conditions substantially impaired her ability to pursue claims earlier.

(See Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999).)

Her medical limitations were:

- involuntary,

- documented,

- severe, and

- directly caused by HISD's wrongful conduct.

Thus, equitable tolling is warranted.

---

## B. HISD's Misconduct Prevented Earlier Filing

HISD:

1. Withheld critical documents from Plaintiff's personnel file.

2. Provided contradictory employment status notices, including an August 17, 2024 email falsely stating Plaintiff was still on FMLA leave months after termination.

3. Destroyed or concealed 2011–2016 records, including evaluations, grievances, HR notes, and evidence from Plaintiff's prior case.

4. Failed to provide ADA or FMLA notices, which is itself a tolling trigger.

5. Misrepresented facts to TDI–DWC, delaying Plaintiff's ability to understand the scope of her claims.

An employer cannot profit from its own concealment.

(See Larson v. Northrop Corp., 21 F.3d 1164 (D.C. Cir. 1994).)

---

## C. HISD's Continuing Violation Bars a Timeliness Defense

The retaliation against Plaintiff:

- began in 2011,

- resurfaced after litigation in 2013–2014,

- intensified upon rehire in 2021,

- escalated in 2023–2024,

- culminated in Plaintiff's 2024 termination and 2025 foreclosure.

This is a single, continuous, uninterrupted pattern of retaliation.

Under Morgan, a hostile or retaliatory environment:

- cannot be divided into isolated incidents

- is timely if one act occurred within the limitations period

Here, multiple acts occurred well within the filing period.

---

## D. Discovery Rule Applies — Plaintiff Could Not Have Known of HISD's Violations Earlier

HISD:

- hid documents,

- altered Plaintiff's personnel file,

- denied her access to ADA, FMLA, and HR records,

- contradicted its own termination date,

- failed to give written reasons for adverse actions.

A claim does not accrue until the plaintiff learns or should have learned the facts giving rise to it.

(See Frame v. City of Arlington, 657 F.3d 215 (5th Cir. 2011).)

Plaintiff discovered HISD's misconduct only after obtaining partial records in 2024–2025.

---

## E. HISD's Fraudulent Concealment Bars any Timeliness Defense

Fraudulent concealment exists where:

1. Defendant has a duty to disclose.

2. Defendant conceals facts material to the claim.

3. Plaintiff relies on the concealment.

HISD concealed:

- ADA forms

- FMLA submissions

- HR notes

- 2011–2016 retaliation records

- medical communications

- documentation regarding her reassignment

- workers' comp reporting misrepresentations

Fraudulent concealment tolls limitations as a matter of law.

---

# IV. CONCLUSION

HISD's timeliness defense—if raised—is legally invalid because:

- Equitable tolling applies,

- Continuing violation doctrine applies,

- Discovery rule applies,

- Fraudulent concealment applies, and

- HISD's own conduct prevented timely filing.